J-S26041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWIN SANTANA | : | |
| | : | |
| Appellant | : | No. 3773 EDA 2016 |

Appeal from the Judgment of Sentence November 14, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007314-2014

BEFORE:   BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 08, 2018**

Appellant Edwin Santana appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his conviction at a bench trial on the charges of burglary, criminal trespass, and simple assault.[1]  After a careful review, we affirm.

The relevant facts and procedural history are as follows:  Following his arrest, Appellant, who was represented by counsel, proceeded to a bench trial. At trial, Edwin Melendez testified that, on April 4, 2014, at 10:30 p.m., Appellant telephoned his house looking for Appellant's estranged wife, Kathy, with whom Mr. Melendez was having a relationship.  N.T., 3/23/15, at 12. Just after midnight, Appellant arrived at Mr. Melendez's house.  **Id.** at 10.

_____

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(ii), 3503(a)(1)(ii), and 2701, respectively.

_____

*   Former Justice specially assigned to the Superior Court.

Appellant was "verbally upset" because Kathy was inside of Mr. Melendez's house. *Id.* at 10-12. Mr. Melendez relevantly testified as follows on direct-examination by the prosecutor:

Q: And where were you when [Appellant] got to your house?

A: Inside my house.

Q: Who were you with inside?

A: His wife.

Q: What happened when [Appellant] approached your house?

A: He knocked on the door, kind of, and he ask[ed] to speak to his wife.

Q: What happened next?

A: His wife, she started getting nervous. She didn't want to go outside.

Q: So she did not go outside?

A: Right. So he started getting more upset. . . .He started getting more upset and he started knocking on the door, pounding on the door. I tried to answer the door but I just told him from the inside to get away from my door or I'll call the cops. At that time when I mentioned the cops, he started kicking the door in.

Q: Okay. How many times did he kick the door?

A: Twice.

Q: Did he ultimately cause damage to the door?

A: Yes.

Q: What happened to the door?

A: He broke the glass, the front glass.

Q: Your door, is it glass from the top all the way to the bottom?

A: Half way.

Q: What happened after the glass broke?

A: Well, I kind of opened the door and tried to talk to him but he sucker punched me. So I fell with my weight onto the pavement, got on top of him and started scuffling.

Q: Okay. You say he sucker punched you. Where did he punch you?

A: On my right side of my face.

Q: Was his hand open or was it [a] closed fist?

A: Closed.

Q: Did you have any injury as a result of that punch?

A: Yeah, bruise.

Q: Can you remember, was it only one time that he punched you, that you can remember?

A: Well, I put my weight on him and threw myself on top of him. We both landed on the pavement.

Q: Okay. At any point did [Appellant] come into your house?

A: Well, as he sucker punched me he had his right hand halfway inside the door.

Q: Did he step into your house at all?

A: No, ma'am. [He] [d]idn't have a chance.

Q: How is it that [the] fight was resolved?

A: Excuse me?

Q: How was it that the fight ended?

A: Well, we was scuffling for a little while, but no more than four minutes. It seems like his wife, from the inside, called the cops. And by the time we were like, not even five minutes into the scuffling, the cops came out of nowhere.

*** 

Q: Mr. Melendez, did you give [Appellant] permission to come into your house at all that night?

A: No.

*Id.* at 12-15.

Mr. Melendez testified that he gave a statement to the police at 5:40 a.m. on April 5, 2014. *Id.* at 15. In the statement to the police, Mr. Melendez indicated that, after Appellant broke the glass of the door, "[h]e reached in and unlocked the door and came inside [his] house. He punched [Mr.

- 3 -

Melendez] in the right eye. We went outside and started fighting in the street." *Id.* at 19.

Thereafter, on direct-examination, the relevant exchange occurred between Mr. Melendez and the prosecutor:

Q: Now, sir, today you said he didn't come in your house, but that night I read correctly that he did. Which one is it?

A: Well, remember what I just told you. His hand was past the doorway. Like, this is the door entrance. His hand was over the frame, so he's inside my house.

Q: Okay. Do you know if his foot came in at all?

A: Well, his foot was in the doorframe. Just the tip was past the doorway.

Q: Okay. So part of his foot was in the doorway and his hand hit your face inside of your house; correct?

A: Yes.

*Id.* at 20. Mr. Melendez clarified that, as a result of the incident, he sustained four bruises and his body ached "for at least two days." *Id.* at 22.

On cross-examination, Mr. Melendez admitted that he keeps a baseball bat near his front door and, after Appellant broke the front door and sucker punched him, he picked up the bat. *Id.* at 31-33. However, Mr. Melendez did not hit Appellant with the baseball bat but "scuffled" with him outside. *Id.* at 44.

Police Officer Michael James testified he responded to the scene at 4:30 a.m. on April 5, 2014. N.T., 12/10/15, at 7. He observed Appellant standing approximately twenty-five feet from Mr. Melendez's house and he was bleeding profusely from his right hand. *Id.* at 8. As the officer stopped his

car, Mr. Melendez ran out of his house and informed the officer that Appellant had broken the glass to his front door, as well as punched him twice with a closed fist. *Id.* at 9-10.

Police Officer Edward Taylor, who was partners with Officer James, confirmed that, when the police arrived on the scene, Appellant was standing on the street and his hand was bleeding. *Id.* at 20. Officer Taylor did not speak to Mr. Melendez. *Id.* at 21.

At the conclusion of all testimony, the trial court convicted Appellant of the offenses indicated *supra*. On June 30, 2016, represented by new counsel, Appellant filed a counseled post-trial motion seeking a new trial. Specifically, Appellant alleged trial counsel was ineffective in failing to call character witnesses at trial. He also alleged trial counsel was ineffective in failing to call Kathy,[2] who would have testified that Appellant never attempted to enter Mr. Melendez's house. In an order entered on November 14, 2016, the trial court summarily denied Appellant's post-trial motion.

Further, on November 14, 2016, the trial court sentenced Appellant to an aggregate of three months to twenty-three months in prison, to be followed by two years of probation. This timely, counseled appeal followed. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a Pa.R.A.P. 1925(a) opinion.

---

[2] In the post-trial motion, "Kathy" was identified as Katisuka Torres.

Appellant presents the following issues on appeal:

I.      Was the evidence insufficient to support the guilty verdict?

II.     Was the verdict against the weight of the evidence?

III.    Did the trial court err in denying Appellant's post-trial motion?

Appellant's Brief at 6.[3]

In his first issue, Appellant contends the evidence was insufficient to sustain his convictions for burglary and criminal trespass. Specifically, Appellant contends there is insufficient evidence that he entered Mr. Melendez's home.[4]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder

---

[3] We have renumbered Appellant's issues for ease of discussion.

[4] Appellant also suggests on appeal that the evidence was insufficient to sustain his conviction for simple assault since Mr. Melendez was the aggressor. However, in his court-ordered Pa.R.A.P. 1925(b) statement, Appellant presented his sufficiency issue as follows: "The evidence was insufficient to support the guilty verdict of the crimes of burglary and criminal trespass as the evidence presented at trial clearly showed that the Appellant never attempted or actually physically entered a dwelling." Appellant's Pa.R.A.P. 1925(b) Statement, filed 12/30/16, at 2. Since Appellant did not raise a sufficiency issue as to simple assault in his Rule 1925(b) statement, we find the issue waived on appeal. *See* Pa.R.A.P. 1925.

unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Graham*, 81 A.3d 137, 142 (Pa.Super. 2013) (quotation marks and quotation omitted).

Here, Appellant was convicted of burglary under 18 Pa.C.S.A. § 3502(a)(1)(ii), which provides the following:

**§ 3502. Burglary**

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

***

(1)(ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1)(ii).

Appellant was convicted of criminal trespass under 18 Pa.C.S.A. § 3503(a)(1)(ii), which provides the following:

**§ 3503. Criminal trespass**

 **(a) Buildings and occupied structures.**--

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

***

>    (ii) breaks into any building or occupied structure or
>    separately secured or occupied portion thereof.

18 Pa.C.S.A. § 3503(a)(1)(ii).  "Breaks into" is defined as "to gain entry by force, breaking, intimidation, unauthorized opening of locks or through an opening not designed for human access."  18 Pa.C.S.A. § 3503(a)(3).

With regard to Appellant's convictions for burglary and criminal trespass, the trial court rejected Appellant's sufficiency challenge as follows:

> [Appellant] challenges the satisfaction of the "entry" element of both crimes.  A person "enters" a building for burglary under [Section] 3502 if "any part of the body of the intruder entered the premises." **Commonwealth v. Gordon**, 477 A.2d 1342, 1348 (Pa.Super. 1984).  The "entry" requirement for burglary is the same for criminal trespass.  **Commonwealth v. Thomas**, 561 A.2d 699, 709 (Pa. 1989).
>
> There is sufficient evidence from the testimony of Mr. Melendez, as well as the officers, to prove that two parts of [Appellant's] body—his hand and his foot—did enter Mr. Melendez's residence, even though he was unauthorized to enter. Mr. Melendez testified credibly that while he was in the residence [Appellant] reached his right hand past the threshold of his front door and into the house to punch him in the face.  Mr. Melendez also testified that [Appellant's] foot was inside the residence, past the doorframe.
>
> It is not necessary under Pennsylvania law for [Appellant's] entire body to pass the threshold of Mr. Melendez's residence to be convicted of burglary—a single part of his body is sufficient. Given the eyewitness testimony and circumstantial evidence of broken glass and injuries to [Appellant's hand], the [trial] court was satisfied that the Commonwealth proved the element of entry for both burglary and criminal trespass beyond a reasonable doubt.

Trial Court Opinion, filed 3/23/17, at 6-7 (citations omitted) (citation to record omitted).

Applying the appropriate standard of review, we agree with the trial court's sound analysis and conclude Appellant is not entitled to relief on his sufficiency of the evidence claim. *See Graham*, *supra*.

In his second issue, Appellant contends the trial court's verdict as to burglary and criminal trespass is against the weight of the evidence as the credible evidence reveals that Appellant never actually entered Mr. Melendez's home.[5]

Initially, we note the Commonwealth argues that Appellant waived his weight of the evidence claim. In order to preserve a weight of the evidence claim for appeal, Pennsylvania Rule of Criminal Procedure 607 requires an appellant to raise the claim with the trial judge in a motion for a new trial "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived. Appellate review of a weight of the evidence claim is limited to review of the

_____

[5] To the extent Appellant challenges on appeal the weight of the evidence as to his simple assault conviction, we note it is waived under Pa.R.Crim.P. 607, as discussed in detail *infra*. Further, the claim is waived under Pa.R.A.P. 1925(b). In his court-ordered Pa.R.A.P. 1925(b) statement, Appellant presented his weight of the evidence issue as follows: "The verdict was against the weight of evidence on the crimes of burglary and criminal trespass, as there was no showing that the Appellant ever attempted or physically entered a dwelling." Appellant's Pa.R.A.P. 1925(b) Statement, filed 12/30/16, at 2. Thus, we decline to address further Appellant's weight claim as it relates to his simple assault conviction.

judge's exercise of discretion." Pa.R.Crim.P. 607, Comment (citations omitted).

We have reviewed the trial transcript, and there is no indication that Appellant raised the weight claim orally at the conclusion of his trial. Moreover, although Appellant filed a written post-trial motion, he did not include therein any claim related to the weight of the evidence. Further, he did not file a post-sentence motion. Finally, Appellant has not provided this Court with the transcript from his sentencing hearing, thus we are unable to determine whether he orally raised a weight claim during the hearing. This Court made an informal inquiry of the lower court and discovered the sentencing transcript was not ordered, and therefore, it was not transcribed. *See Commonwealth v. Preston*, 904 A.2d 1 (Pa.Super. 2006) (holding it is an appellant's duty to order the necessary transcripts). Accordingly, the Commonwealth has correctly argued that Appellant waived his weight of the evidence claim for review.[6] *See* Pa.R.Crim.P. 607(A).[7]

_____

[6] We note that Appellant's raising of the weight of the evidence claim regarding burglary and criminal trespass in his court-ordered Pa.R.A.P. 1925(b) statement did not "cure" his failure to preserve the claim under Pa.R.Crim.P. 607. *See Commonwealth v. Watson*, 835 A.2d 786 (Pa.Super. 2003) (holding that an appellant cannot rectify the failure to preserve an issue for appeal by proffering it in response to the trial court's direction to file statement of matters complained of under Rule 1925).

[7] Alternatively, out of an abundance of caution, we note the trial court addressed Appellant's weight of the evidence claim as to burglary and criminal

In his final claim, Appellant contends the trial court erred in denying his post-trial motion in which he presented solely claims of ineffective assistance of trial counsel. Appellant reiterates on appeal his ineffective assistance of trial counsel claims and requests a new trial.

In **Commonwealth v. Holmes**, 621 Pa. 595, 79 A.3d 562, 576 (2013), our Supreme Court reaffirmed the general rule that claims of ineffective assistance of counsel are to be deferred to PCRA[8] review unless one of two scenarios exists: (1) where the trial court addresses a discrete claim of trial counsel ineffectiveness that is both apparent from the record and meritorious; and (2) where the defendant knowingly and expressly waives his right to seek review under the PCRA. **See id.** at 563–64.

---

trespass in its Rule 1925(a) opinion. In rejecting Appellant's claim, the trial court noted that:

> Sitting as fact-finder, the court found the testimony of Mr. Melendez credible and believed that [Appellant] not only broke Mr. Melendez's front door, but stretched his hand and foot past the threshold of [the home]. The court also believed Mr. Melendez's testimony that [Appellant] did so without Mr. Melendez's permission and for the purpose of punching Mr. Melendez in the face.

Trial Court Opinion, filed 3/23/17, at 7-8 (citations to record omitted). Applying our standard of review, we conclude the trial court did not abuse its discretion in this regard. **See Commonwealth v. Gonzalez**, 109 A.3d 711 (Pa.Super. 2015) (holding appellate court reviews trial court's exercise of discretion as to whether the verdict was against the weight of the evidence so as to shock one's sense of justice).

[8] Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

Nether exception applies herein. First, since the trial court denied relief summarily, the extraordinary circumstance that would warrant immediate review under the first exception is absent. Furthermore, there is no indication Appellant entered in the trial court a knowing and express waiver of his right to collateral review. Hence, the facts of this case do not fall within either exception carved out by the **Holmes** Court. Therefore, Appellant cannot seek review of his ineffectiveness claims on direct appeal. As such, we dismiss Appellant's ineffective assistance of trial counsel claims without prejudice to his ability to raise the claims in a timely PCRA petition.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/18