J-S60043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCES DELCARMEN | : | |
| | : | |
| Appellant | : | No. 374 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 25, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004036-2017

BEFORE: SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:        **FILED NOVEMBER 26, 2019**

Frances Delcarmen (Delcarmen) appeals the judgment of sentence entered on February 25, 2019, by the Berks County Court of Common Pleas (trial court). Following a bench trial, Delcarmen was convicted of criminal trespass, simple assault and harassment, and she was sentenced to an aggregate prison term of nine to 23 months, followed by two years of probation. On appeal, she contends that the Commonwealth elicited insufficient evidence to sustain the trespass conviction. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

This bizarre case concerns a love triangle, the dubious use of a house key and the disturbing practice of dark arts. The trial court recounted the pertinent facts as follows:

In and around the years 2016-2017, [Delcarmen] was in a romantic relationship with Victor Melendez. At the same time Melendez was married to "N.M." N.M. rented an apartment unit [in] Wyomissing, PA. Melendez had a key to the apartment unit, and he spent time at both N.M.'s apartment unit and [Delcarmen's] residence during the course of the affair. At some point in the spring or summer of 2017 Melendez ended the affair with [Delcarmen] and began spending nights with his wife, N.M., at her . . . apartment.

On July 21, 2017, at approximately 4:45 a.m., [Delcarmen] arrived by car at N.M.'s apartment building and used a key to enter N.M.'s specific unit as N.M., Melendez, and N.M.'s adolescent son slept. N.M. and Melendez were sleeping in the same bed and bedroom, and the minor was in his own, separate room. [Delcarmen] did not knock or announce herself, and she was not invited to the apartment unit that night.

[Delcarmen] proceeded to the bedroom where N.M. and Melendez lay asleep in the same bed. Shortly thereafter, N.M. awoke in darkness to find an unknown person (later identified as [Delcarmen]) shaking the contents of a bottle onto the floor.[1] [Delcarmen] testified that she entered the apartment unit to cast a spell and was, in fact, casting the spell by sprinkling powder within the bedroom when N.M. woke up and noticed [Delcarmen] in the bedroom. N.M. immediately screamed and Melendez chased [Delcarmen] into the living room, tackling her and wrestling her to the ground. Melendez held down [Delcarmen] while N.M. called police. When officers arrived, they handcuffed [Delcarmen] in the living room and lifted her off the floor. A

---

[1] N.M. also testified that Delcarmen had aimed a firearm at her face while she emptied the contents of the bottle. *See* Trial Transcript, 12/21/2018, at 12.

loaded, semi-automatic handgun was located underneath [Delcarmen].

A key to N.M.'s apartment was also found attached to a key ring, which [Delcarmen] had used to enter the apartment. [Delcarmen] testified that Melendez provided her with the key during the affair and authorized her to use it to enter N.M.'s apartment unit. In contrast, Melendez said he never gave [Delcarmen] a key. N.M. further testified that she did not give [Delcarmen] a key, and that she never gave [Delcarmen] permission to enter her apartment unit.

Trial Court 1925(a) Opinion, 6/20/2019, at 1-2.[2]

Delcarmen timely appealed. Both Delcarmen and the trial court complied with Pa.R.A.P. 1925. Delcarmen now contends that her conviction of trespass should be reversed because there was no evidence establishing that she knowingly entered the victim's apartment without permission.[2] She emphasizes that she used a key to open the front door to the unit and that Melendez had invited her over without saying that N.M. was home. The Commonwealth argues that there was sufficient evidence to sustain the conviction because Melendez denied giving Delcarmen a key or permission to enter N.M.'s home.

**II.**

A person commits the offense of criminal trespass into a residence by entering or gaining "entry by subterfuge or surreptitiously remain[ing] in any

---

[2] The issue presented in Delcarmen's brief coincides with the sole issue raised in her 1925(b) statement of issues complained of on appeal.

building or occupied structure or separate secured occupied portion thereof[.]" 18 Pa.C.S. § 3503(a)(1)(i). Another element of the offense is that the defendant knew she lacked the privilege to enter at the time of her entry. **Id**. at § 3503(a)(1); **see Commonwealth v. Quintua**, 56 A.3d 399, 402 (Pa. Super. 2012). A defendant's knowledge of a lack of privilege to enter a residence may be inferred from the circumstances. **See Commonwealth v. Gordon**, 477 A.2d 1342, 1348 (Pa. Super. 1984); **Commonwealth v. Benito**, 133 A.3d 333 (Pa. Super. 2016) (same).

Evidence is sufficient to sustain a criminal conviction when, viewing the evidence in the light most favorable to the verdict winner, a trier of fact can find that each element is established beyond a reasonable doubt. **See Commonwealth v. Thompson**, 778 A.2d 1215, 1217-18 (Pa. Super. 2001).[3]

---

[3] Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the Commonwealth as verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. **See Commonwealth v. Dale**, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Bruce**, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Id**. (citation omitted). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." **Commonwealth v. Kinney**, 863 A.2d 581, 584 (Pa. Super.

The role of the trier of fact is to resolve any conflicts in the evidence before it. *See id*.

In this case, the sole point in dispute is whether the Commonwealth elicited evidence from which the finder of fact could determine that Delcarmen knew she lacked permission to enter N.M.'s residence. Delcarmen testified that Melendez gave her the key and invited her to N.M.'s home the night of the incident. However, both Melendez and N.M. testified to the contrary – that they never gave Delcarmen permission to enter the home, much less a key to the front door.

The trier of fact resolves conflicts in evidence and it could, therefore, credit the testimony of Melendez and N.M. to conclude that Delcarmen knew she lacked permission to enter N.M.'s home. Even if Melendez gave her a key, the trier of fact was free to determine that Delcarmen nevertheless knew she lacked permission to enter the premises at 4:45 a.m. while armed and with an intent to cast spells. *See Commonwealth v. Baskerville*, 681 A.2d 195,

---

2004). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Bruce*, 916 A.2d at 661 (citation omitted). Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient because the factfinder is free to believe all, part, or none of the evidence. *Commonwealth v. Baskerville*, 681 A.2d 195, 200 (Pa. Super. 1996).

*Commonwealth v. Lineman*, 1326 EDA 2018, at *2 (Pa. Super. September 16, 2019) (some citations omitted).

200 (Pa. Super. 1996) (trier of fact is free to believe or disbelieve testimony); *Thompson*, 778 A.2d at 1219 (the trier of fact "was free to believe that Appellant's explanation as to why he entered the victims' residences was a pretext for some other criminal motive, and, therefore, that Appellant did not reasonably believe that the victims would permit entry into their home."). Accordingly, the evidence was sufficient as to the trespass conviction and the judgment of sentence is affirmed.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2019